Turley, J.
delivered the opinion of the court.
This is an action of ejectment, and the point to be decided now, arises out of the question, as to what is the true mode of running the first line of the grant under which the plaintiff in ejectment claims the premises in dispute. This grant was issued by the State of Tennessee, to the lessor of the plaintiff, on the 8th day of August, 1822, and calls to begin at a chesnut on the bank of Buffaloe creek, comer to Rhodes’ big survey; then to run south seventeen degrees west along the line of said survey one hundred and thirty poles to a stake, on the bank of the Holston river, two poles below the mouth of Buffaloe creek, corner to Rhodes’ big survey, See. The grant to Rhodes was issued by the State of North Carolina, on the 29th day of July, 1793, and calls to lie on the north side of Holston river, on both sides of Buffaloe creek, beginning at three pines, and running different courses to a chesnut, on the north side of the creek; thence down the creek, a south course, one hundred poles to a beech, on the bank of the river, below the mouth of the creek, Sec. The question for determination is, 'shall this line, from the chesnut be run straight to the point called for on the river, or shall it be run with the meanders of the creek? If with the meanders of the creek, the premises in dispute are included in the limits of the grant by the lessor of the plaintiff, otherwise not. As an abstract question, it would admit of no difficulty; for the call in the grant to Rhodes to run down the creek, it is believed, by all the judicial decisions, constitutes the creek the boundary, and the call in the grant to the plaintiff’s lessor, “to run along the line of Rhodes” would make the creek the boundary on that line of the lands thus granted, notwithstanding the additional call of “south, seventeen degrees west,” which would be rejected upon the well established principle, that a call for course and distance must yield to a call for natural objects.
But much proof has been introduced, tending to show that a straight line from the chesnut to the river has for years been considered, in the neighborhood, as the line of Massengill’s grant, though the same has never been run and marked; and it *207 is now contended, that the general reputation will control the call for the meanders of the creek, ánd make it yield to the call for course and distance, notwithstanding the line has not been marked. Upon this point, the court charged the jury, “that if the surveyor, at the time he made Massengill’s.survey, actually run the line from the chesnut' straight to the point on the river, according to the call for course and distance, though he did not mark the same as the boundary, yet it would control the call for Rhodes’ line, and make the line thus run, the boundary.” Is this the law? We think not; and hold, that before a line run according to course and distance can control a call for natural objects, that it must not only have been traced by the compass, but must have been marked and fixed by the surveyor as the boundary, and which must be proven to be the line on the trial, and so are authorities. 1st Haywood, 22, 376; 2d Hawks R. 218; 3d do. 65; 2d Dervereaux Rep. 415; 3d Dev’r. 65, 67. These authorities fully sustain the position, that parol evidence is not admissible to control the description of the land in a deed or grant, unless monuments of boundary were made at the time of the execution of the deed or grant:'’this an unmarked line is not. The charge of the Judge upon this point, then, is. erroneous, and the judgment must be reversed, and a new trial granted.
We do not deem it proper to enter into investigation of the merits of the defence arising out of the operation of the statute of limitations, as it could not benefit the defendant at this time, we being compelled to reverse upon the other point; the question is, therefore, left open- for re-examination arid adjudication in the Circuit Court.
Judgment reversed, and casé remanded.'